IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ANGELA PHILLIPS | * | |
| | * | |
| v. | * | Civil Case No. 14-56-JFM |
| | * | |
| CAROLYN W. COLVIN | * | |
| | * | |

*************

## MEMORANDUM OPINION

### I. Introduction

Plaintiff, Angela Phillips ("Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act (the "Act"), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Parties have filed cross motions for summary judgment. For the following reasons, Plaintiff's Motion for Summary Judgment (Docket No. 8) will be GRANTED IN PART AND DENIED IN PART, the Commissioner's Motion for Summary Judgment (Docket No. 10) will be DENIED, and the case will be REMANDED to the Commissioner for further proceedings.

### II. Procedural History

In January 2011, Plaintiff filed applications for DIB and SSI. R. 187-206. The applications were denied on June 2, 2011. R. 93-100. Plaintiff filed a timely request for an administrative hearing. R. 103-04. Administrative Law Judge David F. Brash ("ALJ") held hearings on June 13, 2012, (where Plaintiff failed to appear) and October 2, 2012. R. 148-49, 31-77. Plaintiff appeared with counsel at the second hearing and testified on her own behalf. R. 31-65. An impartial vocational expert ("VE") also testified at the hearing. R. 31-77.

**III. Statement of the Case**

In a decision dated October 15, 2012, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2. The claimant has not engaged in substantial gainful activity since June 30, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: major depressive disorder, post-traumatic stress disorder, panic disorder with agoraphobia, personality disorder, and polysubstance dependency. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can never climb a ladder, rope, or scaffold; she must avoid all exposure to unprotected heights, dangerous machinery, and like workplace hazards; she is limited to understanding, remembering, and carrying out simple instructions and performing simple, routine tasks; she is limited to no work-related interaction with the public, *occasional* and superficial interaction with co-workers, and only *occasional* interaction with supervisors, such that her work would be essentially isolated; and she is limited to a low stress work environment, which means no production rate pace work, but, rather, goal oriented work with only *occasional* and routine changes in the work setting.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 21, 1986 and was 22 years old, which is defined

as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

**IV. Standard of Review**

This Court reviews the file to determine whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383©(3); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court does not conduct a *de novo* review of the Commissioner's decision, and does not re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986). Congress expressly intended that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is defined not as "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). A decision supported by substantial evidence must be upheld even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of

review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

To establish disability, a claimant must prove a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988) (citing *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is unable to perform substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

An ALJ is required to make specific findings of fact to support his or her conclusions. *See Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider the entire record and must provide adequate explanations for disregarding or rejecting certain evidence. *See Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant

qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

Where a claimant seeks review of an administrative determination, the Agency's decision cannot be affirmed on a ground other than that actually relied upon by the Agency in making its decision. The Supreme Court has explained:

When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *see also Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001) (applying the same principles in the Social Security disability context).

**V. Discussion**

Plaintiff contends that the ALJ erred in his consideration of her mental impairments, both as to whether Listings 12.04 and 12.06 were met and as to determination of her residual functional capacity ("RFC"). As noted, the Court is constrained to assess whether the ALJ's decision is supported by substantial evidence. In this case, the ALJ's decision does not provide a sufficient explanation as to why the ALJ rejected certain medical evidence.

The flaws in the ALJ's decision lie in two primary areas. First, the ALJ's application of the special technique for consideration of mental impairments was inadequate. *See* 20 C.F.R. §§

5

404.1520a, 416.920a. The ALJ described Plaintiff's activities of daily living. R. 20. However, the ALJ's discussion of the relevant medical evidence was limited to (1) Plaintiff's lack of inpatient care and (2) a non-specific discussion of GAF scores and how they are assigned. *Id.*; *see Reese v. Colvin*, No. 14–cv–376, 2014 WL 4976444, at *5 (W.D. Pa. Oct. 3, 2014) (explaining that although GAF scores are medical evidence that an ALJ should address, they do not have a "direct correlation to the severity requirements" of the listings) (citing 65 Fed.Reg. 50746–01, 50764–65 (2000)). The ALJ then conclusorily found Plaintiff to have moderate limitations in the three relevant functional areas, without providing any factual explanation of the bases for those assessments. R. 20. Accordingly, on remand, the ALJ should cite to specific evidence supporting his assessment of Plaintiff's capacity in each functional area.

Second, throughout the ALJ's opinion, he failed to consider significant portions of the medical evidence of record. Specifically, with respect to the consultative evaluations from Drs. Uran and Meyer in September, 2011, the ALJ's evaluation relied heavily on the GAF scores those physicians assigned, and did not take into account the physicians' overall description of Plaintiff's mental state. The ALJ correctly indicated that Drs. Uran and Meyer assigned a GAF score of 50. R. 334. However, one of their specific recommendations was "Referral to Social Security Disability," indicating that, despite the assigned GAF score, they did not believe Plaintiff to be capable of substantial gainful employment. *Id.* They also noted that Plaintiff's prognosis was "poor." *Id.* Under "Functional Limitations," they noted that Plaintiff suffered from agoraphobia and, "hence, missed work is likely." R. 333. The ALJ opined that, "The opinions [of] Drs. Uran and Meyer are deserving of substantial deference, for they are relatively consistent with the opinions of both treating psychiatrists." R. 24. However, in drawing that conclusion, the ALJ appears to be relying only upon the assigned GAF score, and not the written opinions as set forth above.

6

Other treatment notes seem to confirm the written opinions expressed by Drs. Uran and Meyer. *See, e.g.,* R. 319 (treatment notes reflecting that Plaintiff "frequently missed appointments and had to attend two no show groups in three months. Attendance did not improve after attending groups."). For example, Dr. Francis noted that, at an initial appointment when Plaintiff was assigned a GAF of 50, she was "having difficulty completing even her daily routine."[1] R. 336. Less than six weeks later, Dr. Francis opined that with medication, Plaintiff was "responding very well and functioning at her optimal level and leading a productive life." R. 337. That later opinion, however, does not inherently support the RFC determined by the ALJ, because it is unclear whether Plaintiff's own "optimal level" would permit her to perform substantial gainful activity.

Essentially, the ALJ did not provide an adequate explanation to permit the Court to evaluate whether or not his conclusion is supported by substantial evidence. An ALJ must consider all medical evidence contained in the record and must explain why particular evidence is disregarded or rejected. *Heckler*, 734 F.2d at 961. Here, the Court cannot ascertain if the ALJ considered all of the medical records in their entirety, or why each of the relevant medical opinions was accepted or rejected. Therefore, the ALJ's determination is not supported by substantial evidence. However, an immediate award for benefits will not be granted. The case will be remanded for further proceedings in accordance with this opinion. In so remanding, the Court expresses no opinion as to whether the ALJ's ultimate conclusion that Plaintiff was not entitled to benefits was correct or incorrect.

**VI. Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment will be DENIED.

---

[1] For obvious reasons, these notes underscore the unreliability of exclusively using a GAF score to evaluate a physician's opinion. A GAF score of 50 cannot be deemed to indicate an ability to work, if the evaluator simultaneously indicates that the patient is unable to complete "even her daily routine."

Plaintiff's Motion for Summary Judgment will be GRANTED with respect to the motion to vacate the Commissioner's decision and remanded for further administrative proceedings, and DENIED with respect to a request for an award for benefits.  An appropriate Order follows.


Dated:  October 16, 2014                                /s/*J. Frederick Motz*
                                                                                          J. Frederick Motz
                                                                                          United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELA PHILLIPS | * | |
| | * | |
| v. | * | Civil Case No. 14-56-JFM |
| | * | |
| CAROLYN W. COLVIN | * | |
| | * | |

*************

## **ORDER**

For the reasons stated in the accompanying memorandum opinion, it is, this 16th day of October, 2014 ORDERED that

(1) Plaintiff's Motion for Summary Judgment (Docket No. 8) is GRANTED IN PART AND DENIED IN PART;

(2) the Commissioner's Motion for Summary Judgment (Docket No. 10) is DENIED;

(3) the decision of the Commissioner is VACATED;

(4) the Clerk is directed to REMAND this case for further administrative proceedings;

(5) the Clerk shall CLOSE this case; and

(6) final judgment of this Court is entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.

       /s/*J. Frederick Motz*
       J. Frederick Motz
       United States District Judge